UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARENA HERNANDEZ,

    Plaintiff,

v.                                                                  Case No: 8:16-cv-781-T-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Marena Hernandez's Complaint (Doc. 1) filed on March 31, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On April 4, 2012, Plaintiff filed an application for disability insurance benefits ("DIB") and on April 5, 2012, Plaintiff filed an application for supplemental security income ("SSI"). (Tr. at 153, 154, 302-319). Plaintiff asserted an onset date of April 14, 2010. (*Id.* at 302, 310). Plaintiff's applications were denied initially on June 20, 2012, and on reconsideration on September 7, 2012. (*Id.* at 175, 176). A hearing was held before Administrative Law Judge ("ALJ") Dores D. McDonnell, Sr. on April 29, 2014. (*Id.* at 91-114). The ALJ issued an unfavorable decision on May 8, 2014. (*Id.* at 70-78). The ALJ found Plaintiff not to be under a disability from April 14, 2010, through the date of the decision. (*Id.* at 78).

On January 27, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-7). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 31, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 13).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January

2

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2016. (Tr. at 72). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2010, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the severe impairment of hypertension (20 C.F.R. §§ 404.1520(c) and 416.920(c)). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* at 74). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work, finding she "can lift and/or carry 25 pounds frequently and 50 pounds occasionally and stand, walk, or sit for 6 hours each in an 8-hour workday. (*Id.* at 75). The claimant has no limitations in pushing/pulling with hand or foot controls. (*Id.*). She further experiences no manipulative, visual, communicative, postural, or environmental limitations." (*Id.*). The ALJ determined that Plaintiff is capable of performing her past relevant work as a driver, laundry aid, and cashier and

---

1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

dishwasher in a restaurant. (*Id.* at 78). The ALJ determined that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*). The ALJ concluded that Plaintiff was not under a disability from April 14, 2010, through the date of the decision. (*Id.*).

**D.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises three issues.  As stated by Plaintiff, the issues are:

1) The ALJ erred by failing to properly consider the severity of Plaintiff's impairments of bilateral hand pain and depression and their combined effect on her residual functional capacity.

2) New and material evidence submitted to the Appeals Council warrants remand.

3) Substantial evidence failed to support the ALJ's finding that Plaintiff had the RFC for medium work.

(Doc. 21 at 3).  The Court will address each issue in turn.

**A.     Severity of Bilateral Hand Pain and Depression and the Effect on RFC**

Plaintiff raises a number of arguments relating to this issue.  Some of these arguments relate to the ALJ's consideration of the severity of Plaintiff's hand pain, some relate to her depression, others relate to the resulting RFC determination, and still others relate to the weight afforded certain physicians' opinions. (Doc. 21 at 13-18).  As a threshold matter, how the ALJ considered the treating physicians' reports will impact the Court's analysis as to the ALJ's consideration of the severity of Plaintiff's bilateral hand impairments and the resulting RFC determination.  Thus, the Court will begin its analysis by considering Plaintiff's arguments concerning the lack of weight afforded certain physicians' opinions by the ALJ.

In that regard, Plaintiff argues that the ALJ failed to mention and weigh the treatment records and opinions of Shrinath Kamat, M.D., Tampa Family Health Care in 2012, and Scott Gargasz, M.D. that relate to her bilateral hand impairments. (Doc. 21 at 15-16).  The Commissioner asserts that the ALJ accurately considered Plaintiff's medical treatment and discussed her alleged carpal tunnel syndrome in depth. (Doc. 22 at 11).  Further, the Commissioner responds that the ALJ is not required to cite to every piece of evidence in the file. (Doc. 22 at 11).

### 1.     Legal Standard

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

To determine whether the ALJ's opinion is supported by substantial evidence, the Court will review and consider the medical records from Dr. Kamat, Tampa Family Health Care, and Dr. Gargasz in turn.

## 2. Dr. Kamat

Dr. Kamat's treatment records begin on July 25, 2012. (Tr. at 705-07). On that date, Plaintiff complained of pain and paresthesia in both hands as well as weakness. (*Id.* at 705). Plaintiff reported that carpal tunnel repair surgery was conducted in March of 2012 on the left hand, but with no benefit. (*Id.*). Plaintiff stated that she had a lot of pain in both hands and these symptoms began approximately two (2) years prior to the appointment. (*Id.*). Plaintiff complained that she was in quite a bit of discomfort and pain in bother her hands and wrists and the pain radiated into her forearms. (*Id.*). Upon examination, Dr. Kamat found Plaintiff's handgrip limited due to pain and the Phalen's test positive bilaterally. (*Id.* at 706). Dr. Kamat diagnosed Plaintiff with paresthesia (pain and weakness in both upper extremities, especially in the hands, more so on the left), carpal tunnel syndrome, "however coexisting the peripheral neuropathy or other entrapment neuropathies cannot be ruled out." (*Id.* at 707). Dr. Kamat determined the symptoms were worsening. (*Id.*). Dr. Kamat ordered certain testing and prescribed medication. (*Id.*). On December 27, 2012, Plaintiff returned to Dr. Kamat with the same complaints. (*Id.* at 688). Plaintiff reported little improvement in her pain level and that the medication she was taking did not help much. (*Id.*). Dr. Kamat diagnosed Plaintiff with paresthesia in both upper extremities and that her condition was worsening. (*Id.* at 689). Dr. Kamat prescribed different medications and advised Plaintiff to do isometric stretch exercises for her hands. (*Id.* at 688).

On March 27, 2013, Plaintiff returned to Dr. Kamat with continuing pain and spasms in her left hand. (*Id.* at 685). Plaintiff claimed that her medication was no longer effective, her hands cramped, and she had tenderness in her palms. (*Id.*). Dr. Kamat noted Plaintiff appeared to be developing a fibrous tissue or contraction of the fascia of the palm. (*Id.*). Dr. Kamat

prescribed different medications. (*Id.* at 685-86). On June 19, 2013, Plaintiff saw Dr. Kamat and reported some improvement with the prescription medication regimen. (*Id.* at 677). On September 18, 2013, Plaintiff reported that the medications helped to ease the pain to a bearable level, but she continued to have numbness and an achy feeling in her left hand. (*Id.* at 674). On December 19, 2013, Plaintiff reported to Dr. Kamat that she had some improvement in her pain and numbness. (*Id.* at 671).

### 3. Tampa Family Health Care

Plaintiff went to Tampa Family Health Care and saw Margaret F. Amanti, D.O. on February 9, 2011. (*Id.* at 620-21). Dr. Amanti diagnosed Plaintiff with carpal tunnel syndrome and prescribed medication and a brace to wear at night. (*Id.* at 621). Plaintiff returned on February 22, 2011, complaining of pain and numbness in both hands as well as other symptoms. (*Id.* at 616, 619). Plaintiff indicated her hands were swollen and she could not move them without pain. (*Id.* at 616). Plaintiff indicated the medication worked for a few days and then her symptoms returned. (*Id.*). Plaintiff was prescribed medications, instructed to use a brace at night, and to follow through with a hand specialist. (*Id.* at 618). Plaintiff returned on March 7, 2011 with the same complaints. (*Id.* at 613-14). She was given a note to excuse her from work for two (2) weeks. (*Id.* at 614). Plaintiff went to Family Health on March 21, 2011 with the same symptoms and again on October 5, 2011. (*Id.* at 610, 606). At the October visit, upon examination, Plaintiff was found to have bilateral swollen wrists, Phalen's maneuver showing hand-numbness/tingling in the median nerve distribution, Tinel's sign being positive, a reverse Phalen's test was performed, and a carpal compression test of the wrists showing weakness bilaterally in her hands. (*Id.* at 608). Plaintiff was prescribed medications and referred to a hand surgeon. (*Id.* at 608). On February 2, 2012, Plaintiff returned to obtain a referral for her hands.

(*Id.* at 586). Plaintiff's wrists showed abnormalities, and tenderness on palpation, moving her wrists elicited pain, Phalen's maneuver showed hand numbness/tingling in the median nerve distribution, Tinel's sign was positive, and her wrists were weak bilaterally. (*Id.* at 588). On April 3, 2012, Plaintiff returns for a referral for a hand surgeon for her right hand. (*Id.* at 578). Plaintiff had surgery on her left hand. (*Id.*). Plaintiff stated that her pain is managed with medication. (*Id.*).

### 4. Dr. Gargasz

Plaintiff went to Dr. Gargasz on November 28, 2011, complaining of pain in both hands with numbness and tingling bilaterally. (*Id.* at 529). Plaintiff complained that the numbness and tingling woke her up at night, and they were worse when driving, brushing her hair, and brushing her teeth. (*Id.*). Also, Plaintiff complained of dropping objects and having a weaker grip. (*Id.*). Plaintiff stated that she wore splints and these helped. (*Id.*). Dr. Gargasz assessed Plaintiff with carpal tunnel syndrome and trigger finger. (*Id.* at 530). Plaintiff returned on December 5, 2011 with similar complaints. (*Id.* at 531). Dr. Gargasz determined that Plaintiff required injections to the carpal tunnel bilaterally and may require injections to the trigger fingers if the pain did not subside. (*Id.* at 532). Plaintiff returned on January 9, 2012 claiming that she continued to have pain and that the injections did not help. (*Id.* at 534). On Plaintiff's January 30, 2012 visit, Dr. Gargasz determined that Plaintiff would require injections for her trigger fingers. (*Id.* at 538). Plaintiff continued to complain that the trigger finger injections helped only a little and that she continued to have pain, numbness, and tingling in her wrists. (*Id.* at 540). After surgery on her left hand, Plaintiff reported that she was doing well, but still had some pain and stiffness. (*Id.* at 543). On April 16, 2012, Plaintiff reported that the left hand had full extension, but she was unable to close it, and she continued to have pain in her right hand. (*Id.* at 546-47). On her

9

return on May 7, 2012, Plaintiff had pain and swelling in her left hand as well as tingling and numbness bilaterally. (*Id.* at 549-50).

5. Analysis

Upon review of the ALJ's decision, the ALJ failed to mention or consider the treatment notes of Dr. Kamat, Tampa Family Health Care, and Dr. Gargasz concerning Plaintiff's carpal tunnel impairment.[2] At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Id.* Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

In this case, the ALJ failed to mention or consider the treatment notes of Dr. Kamat, Tampa Family Health Care, or Dr. Gargasz in connection with Plaintiff's carpal tunnel impairment. Dr. Kamat considered the nature and severity of Plaintiff's bilateral hand impairments including Plaintiff's symptoms of pain, numbness, and weakened grip strength. (*See* Tr. at 688, 685, 686, 674, 671, 678, 705, 706). Further, Dr. Kamat diagnosed Plaintiff with

---

[2] At one point in the decision, the ALJ refers to Exhibit 8F, which includes the treatment notes from Tampa Family Health Care, but the reference is to cardiac issues, poor exercise habits, and not taking her medications as prescribed. (Tr. at 76). The ALJ included a string cite to Exhibits, Exhibit 7F, which comprises the treatment notes of Dr. Gargasz, but it is impossible to discern a portion of the paragraph, if any, that specifically refers to Dr. Gargasz's treatment records or opinions. (*Id.* at 73). Otherwise, the ALJ fails to mention or cite to either of these medical providers' treatment notes or records as to Plaintiff's carpal tunnel impairment.

carpal tunnel syndrome. (*See id.* at 707, 689). The records from Tampa Health Care reflect a diagnosis of carpal tunnel syndrome and also reflect numbness and pain bilaterally in Plaintiff's hands and a weakness in Plaintiff's wrist. (*See e.g.*, *id.* at 610, 613, 616, 619, 621). Similarly, Dr. Gargasz's records reflect a diagnosis of carpal tunnel syndrome and complaints of pain, numbness, tingling, and weakness. (*See e.g.*, *id.* at 529, 530, 532, 532, 534, 538). In the decision, however, the ALJ failed to mention or state the weight he afforded the opinions of Dr. Kamat, Tampa Family Health Care, and Dr. Gargasz concerning Plaintiff's carpal tunnel impairment. Yet, without the benefit of these medical records, the ALJ determined that Plaintiff had no limitations in pushing/pulling with hand or foot controls and no manipulative limitations. (*Id.* at 75). The Court finds that the ALJ's decision is not supported by substantial evidence as to Plaintiff's manipulative limitations. Accordingly, this action must be remanded to allow the ALJ to consider the medical records relating to Plaintiff's manipulation limitations in conjunction with the other medical records in evidence.

The Commissioner argues that the ALJ is not required to cite to every piece of medical evidence, citing to *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). In *Dyer*, plaintiff appealed the final decision of the administrative law judge denying his social security disability claims. *Id.* at 1209. The district court reversed the administrative law judge's decision, finding that the ALJ applied the wrong pain standard, the medical records supported Plaintiff's complaints, and the ALJ failed to consider the medications prescribed. *Id.* The Eleventh Circuit held that the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision and, thus, reversed and remanded the district court's decision with instructions to enter judgment consistent with the ALJ's findings. *Id.* at 1212. In *Dyer*, the Eleventh Circuit held that there is "no rigid requirement that the ALJ specifically refer

to every piece of evidence in his decision, so long as the ALJ's decision [] is not a broad rejection[,] which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (citation and internal quotation marks omitted).

The instant case is distinguishable from *Dyer*. In *Dyer*, the ALJ failed to mention that plaintiff took pain medication on only one occasion in connection with an injury unrelated to Dyer's impairments in connection with his application for disability. *Id*. Here, the ALJ failed even to address the reports of Dr. Kamat, Tampa Family Health Care, and Dr. Gargasz and their opinions that clearly relate to Plaintiff's disability claim. Given the lack of analysis as to these records concerning Plaintiff's carpal tunnel syndrome, the Court is unable to conduct a meaningful judicial review of the ALJ's opinion concerning his conclusion that Plaintiff is not disabled. *See Robinson v. Astrue*, No. 8:08-CV-1824-T-TGW, 2009 WL 2386058, at *4 (M.D. Fla. Aug. 3, 2009) (holding that when an ALJ fails to provide specific reasons for his determinations, then the ALJ's general statements do not "permit meaningful judicial review"). Accordingly, this action must be reversed and remanded.

## III. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on Plaintiff's depression; the severity of Plaintiff bilateral hand pain and its effect on Plaintiff's RFC; evidence submitted to the Appeals Council; and the ALJ's RFC determination. Because the Court finds that on remand, the Commissioner must evaluate the medical evidence of Dr. Kamat, Tampa Family Health Care, and Dr. Gargasz in light of all of the evidence of record, the disposition of these remaining issues would, at this time, be premature.

**IV. Conclusion**

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Appeals Council is not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the records of Dr. Kamat, Tampa Family Health Care, and Dr. Gargasz in conjunction with all of the other medical evidence of record.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on May 30, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties